FILED
SUPERIOR COURT
OF GUAM

2020 AUG 14 AM 11: 59

CLERK OF COURT
BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THOMAS J. FISHER<br><br>                    Petitioner,<br><br>v.<br><br>LEEVIN CAMACHO<br>ATTORNEY GENERAL OF GUAM<br><br>                    Respondent. | **Superior Court Case No. SP0080-20**<br><br><br>**DECISION AND ORDER** |

Petitioner Thomas J. Fisher asks the Court to mandate the Office of the Attorney General (AG) to respond to his Sunshine Act requests. Having considered the parties' arguments and applicable law, the Court ORDERS that the AG disclose any and all documents responsive to Fisher's request for communications among and between employees of the AG concerning the payment of its employees. The Court further ORDERS the Attorney General to produce an affidavit and index supporting its claims of privilege as to Fisher's request for communications with the Office of the Governor, deliberative process privilege, and attorney-work product.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Fisher's Sunshine Act request sought two items: "[a]ll communications between the office of the Attorney General of Guam and the office of the Governor from March 2020 to date of response in whatsoever form, related to payment of employees of the Government of Guam" and "[a]ll communications among and between employees of the office of the Attorney General relating to or concerning payment of Government of Guam employees and/or made on social

media platforms including but not limited to 'WhatsApp,' 'Facebook' and similar platforms." V. Pet., Att. A (June 16, 2020). The AG responded by largely rejecting the request for several reasons: the deliberative process privilege, the attorney work-product doctrine, the attorney-client communications privilege, or the pending litigation exception. *Id.*, Att. B. The AG, however, did disclose several pages of "WhatsApp Chat Excerpts." *Id.*

The pending litigation references *Topasna & DOES 1-100 v. Govt. of Guam et. al.*, Superior Court Case No. SP0064-20, which concerns employee payment increases in light of the public health emergency. Governor Lourdes A. Leon Guerrero declared the public health emergency due to the COVID-19 pandemic on March 14, 2020, and many Government of Guam agencies closed or operated in a limited capacity in response. Exec. Order 2020-03 (2020); Exec. Order 2020-05. In response to a senator's request, the AG subsequently issued an opinion denying employee payment increases to Government of Guam employees who worked in a limited capacity during the pandemic. Guam Att'y Gen. Op. No. LEG 20-0156 APPLICABILITY OF DOUBLE PAY PROVISION IN DOA PERSONNEL RULES AND REGULATIONS RULE 8.406 TO COVID-19 PUBLIC HEALTH EMERGENCY (May 14, 2020). Employees who were denied double pay sued, but the court denied the petition. Dec. and Order re Petition for Writ of Mandamus, Super. Ct. Case No. SP0064-20 (June 4, 2020). The AG represents the Governor, among other defendants, in that litigation. That matter is now on appeal.

## II. LAW AND DISCUSSION

### A. Standard for a Sunshine Act Writ

The Sunshine Act allows a person seeking to enforce his right to inspect or to receive a copy of any public record to "institute proceedings for injunctive or declarative relief or writ of

mandate." 5 GCA § 10111(b). The Act further specifies that "[t]he burden is on the agency to sustain its action. All records shall be presumed public and the burden of establishing that a document or record is private shall be upon the agency or person claiming that the document [or] record should not be disclosed or inspected." 5 GCA § 10111(c).

While the AG advocates that the Court examine whether Fisher has demonstrated there is no plain or adequate remedy or that the AG failed in a clear ministerial duty to perform and act specifically required by law, the Sunshine Act places the burden on the AG to overcome the presumption of public disclosure. This Court follows the plain language of section 10111(c) and will proceed to determine if the AG has met its burden.

**B. Reasonableness of Requests**

The AG first objects to Fisher's request due to unreasonableness. Response at 3 (July 20, 2020). Section 10103(c) of the Sunshine Act expressly requires that a request must "reasonably describe[] an identifiable record or records."

Based on the case cited by the AG--*Tereshchuck v. Bureau of Prisons*--the burden of demonstrating overbreadth is substantial. 67 F. Supp. 3d 441, 455 (D.D.C. 2014), *aff'd sub nom. Tereshchuk v. Bureau of Prisons, Dir.*, 2015 WL 4072055 (D.C. Cir. June 29, 2015). "When the reasonableness of search and production is questioned, the agency has the burden to produce a sufficient explanation as to why it would be unreasonably burdensome." *Id.*

The AG has not demonstrated that Fisher made an unreasonable request. Instead, as the AG admits, they have already searched, collected, and examined a voluminous amount of records and narrowed the relevant records to approximately 220 pages. The Court finds Fisher's request to be reasonable.

## C. Protected Documents

### 1. The attorney-client privilege and attorney work-product doctrine likely shield communications between the AG and the Governor from disclosure.

In response to Fisher's first request for "[a]ll communications between the office of the Attorney General of Guam and the office of the Governor from March 2020 to date of response in whatsoever form, related to payment of employees of the Government of Guam," the AG refused to disclose any relevant documents. V. Pet., Att. A. The AG claims that the attorney-client privilege applies. Response at 10.

The attorney-client privilege is one of the oldest recognized privileges for confidential communications. *Swidler & Berlin v. United States,* 524 U.S. 399, 403 (1998). It seeks "to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). However, it only attaches to confidential communications by the client to his attorney, and "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976). The privilege extends to situations in which an attorney is a government lawyer and the client a government entity. *See, e.g., In Re: A Witness Before the Special Grand Jury*, 288 F.3d 289, 291 (7th Cir. 2002) ("[B]oth parties here concede that, at least in the civil and regulatory context, the government is entitled to the same attorney-client privilege as any other client."); *In re Lindsey*, 158 F.3d 1263, 1268 (D.C.Cir. 1998) ("Courts, commentators, and government lawyers have long recognized a government attorney-client privilege in several contexts."); Theodore B. Olsen, Assistant Attorney General, Office of Legal Counsel, *Confidentiality of the Attorney General's Communications in Counseling the*

*President*, 6 Op. Off. Legal Counsel 481, 495 (1982)("[a]lthough the attorney-client privilege traditionally has been recognized in the context of private attorney-client relationships, the privilege also functions to protect communications between government attorneys and client agencies or departments, as evidenced by its inclusion in the FOIA, much as it operates to protect attorney-client communications in the private sector."). In the context of a Sunshine Act request, neither party disputes that section 10108(i) encompasses the privilege.

Because the AG is the Governor's attorney in *Topasna*, the Court is inclined to find any related communications between the AG and the Governor are protected. However, the Court cannot determine whether the privilege applies to its communications with the Governor because the AG has not proven each element of the privilege, e.g., the confidentiality of its communications with the Governor. *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998) (finding that a blanket assertion of the privilege will not suffice and that the Office of the President must "present the underlying facts demonstrating the existence of the privilege" in order to carry its burden."); *see also SEC v. Gulf & Western Industries*, 518 F.Supp. 675, 682 (D.D.C. 1981) (finding that a blanket assertion of the privilege does not suffice and "[t]he proponent must conclusively prove each element of the privilege.").

Until the AG supplies the Court with an affidavit and index supporting its claim of privilege, the Court withholds determining that it applies. *See* GRCP 45 (d)(2)(A) (requires the party claiming privilege to expressly state the privilege, and support that claim with "a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.").

The AG also refuses to disclose communications with the Governor on the basis of attorney work-product, which neither party disputes is encompassed by section 10108(i) of the

Sunshine Act. The doctrine protects material gathered and memoranda prepared by an attorney acting for his client, but unlike the attorney-client privilege, the work-product doctrine is limited to documents prepared in contemplation of litigation. *Hickman v. Taylor*, 329 U.S. 495 (1947). "The privilege covers factual materials prepared in anticipation of litigation, as well as mental impressions, conclusions, opinions, and legal theories." *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997). Documents prepared in anticipation of foreseeable litigation may "address the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome," even where the prospective litigation opponent is unknown. *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 7–8 (D.D.C. 2000) (citations omitted). The critical factor for determining the nature of the document is determining the primary purpose for the creation of the document. *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C. Cir. 1987).

In summary, any documents the AG prepared for the Governor for *Topasna* or in anticipation of similar litigation may be exempt from disclosure under the attorney work-product privilege. However, again, the AG has failed to support its claim of privilege. If the AG wishes to avail of the privilege, it must submit an index and affidavit for the Court's review.[1]

### 2. Some of the requested intra-agency communications are likely protected from disclosure.

The Court recognizes that in responding to Fisher's second request, the AG acts in separate capacities: as legal counsel for the Government of Guam, its agencies, and its officers, and as an employer. The Court examines the AG's Sunshine Act response separately under each of its roles.

---

[1] The AG does not argue that the deliberative process privilege applies to its communications with the Governor.

### a. As Attorney General in Issuing Opinions

Fisher's second request seeks any intra-agency communications from March 1 to the AG's date of response related to the payment of Government of Guam employees. The AG, in its role as "interpreter" of the laws of Guam, claims that the deliberative process privilege applies to any documents related to its May 14, 2020 opinion "Applicability of Double Pay Provision in DOA Personnel Rules & Regulations Rule 8.406 to COVID-19 Public Health Emergency." Response at 5. The Legislature requested legal guidance on the issue on April 30, 2020. Guam Att'y Gen. Op. No. LEG 20-0156 at 1.

As an initial matter, the AG admits that the deliberative process privilege does not exist in Guam's common law or a Guam statute. Instead, the AG asks the Court to recognize that sections 10108(i)[2] and (q)[3] of the Sunshine Act encompass the privilege recognized in federal common law.[4] Response at 6.

Looking to federal common law, under the deliberative process privilege, a government agency can withhold documents that "reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *FTC v. Warner Commn's*, 742 F.2d 1156, 1161 (9th Cir. 1984). The privilege seeks to protect candid communication among officials who otherwise may not communicate as frankly "if each remark is a potential item of discovery and front page news." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001). However, mere conclusory

---

[2] Section 10108(i) shields "[a]ll existing privileges or confidential records or other information expressly protected under the law" from required disclosure.

[3] Section 10108(q) shields an agency's draft documents from required disclosure.

[4] Federal courts recognize that the privilege is preserved in Exemption 5 of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(5). The statute shields "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency" from disclosure. 5 U.S.C. § 552(b)(5).

assertions of privilege do not satisfy an agency's burden to establish their right to withhold information from the public. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980). At least one court has found that an agency's blanket assertion of the deliberative process privilege fails to invoke the privilege and therefore waives its right to assert it later. *Alpha I, L.P. ex rel. Sands v. United States*, 83 Fed. Cl. 279, 290 (2008); *see also In re McKesson Governmental Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 599 (N.D. Cal. 2009).

Here, the AG not only asks the Court to recognize a privilege via decisional law but also fails to supply the Court with even the minimal information necessary to determine whether the privilege applies to any withheld documents. However, assuming the privilege exists, the Court analyzes whether the privilege applies to any of the requested communications. Any communications or documents must be predecisional and deliberative to be exempt from disclosure. *FTC v. Warner Commc'ns*, 742 F.2d 1156, 1161 (9th Cir. 1984) (to enjoy protection, a document "must be predecisional--i.e., it must have been generated before the adoption of [a] policy or decision...[and] deliberative in nature, containing opinions, recommendations, or advice about ... policies [or decisions]"). In short, any communications or documents created by an agency as part of the deliberative process preceding its final decision are exempt from disclosure. *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 6–7 (D.D.C. 2000).

The Court finds that the deliberative process privilege does not protect any communications pre-dating April 30 and dated after May 14. Absent any contentions of other applicable policies or decisions, the "final decision" at issue here is the AG's opinion. As the AG admits, it issued its decision on May 14, 2020, in response to an April 30, 2020 request. Any requested communications from March 1 until April 30 precede this deliberative stage. Although

the AG states that "[d]uring the period between March 15 and May 26, the issue of compensation for government employees who reported to work during the early stages of the COVID-19 public health emergency was a topic of media reports," these media reports have nothing to do with the AG's deliberative process preceding a decision the legislature did not request until April 30. Response at 7. Therefore, any communications pre-dating the requested legal advice are not deliberative and any communications post-dating the opinion are not predecisional.

If the AG wishes to avail of the deliberative process privilege for communications dated May 1 to May 14, it must submit an index of the documents for the Court to review. *See Vaughn v. Rosen*, 157 U.S. App. D.C. 340, 484 F.2d 820 (1973), *cert. denied*, 415 U.S. 977 (1974) ("Upon remand the Government should undertake to justify in much less conclusory terms its assertion of exemption and to index the information...."). The Court cautions the AG that the index should contain sufficient information for the Court to determine whether the privilege applies. *Id.* It also cautions the AG that the Court has not expressly recognized that the Sunshine Act exempts documents from disclosure pursuant to the deliberative process privilege.

Alternatively, the AG argues that any intra-agency communications regarding the *Topasna* case or any communications related to similar, future litigation concerning Government of Guam employees' compensation or pay issues are protected by either section 10108(a) of the Sunshine Act or the attorney work-product doctrine. Response at 11. It claims that it does not matter that it is not a named party defendant to the *Topasna* case because the inclusion of an AG employee as a plaintiff in the active litigation makes the agency a foreseeable defendant. Response at 10.

Section 10108(a) expressly protects only documents related to litigation in which an

agency is a party.[5] The AG is not a party to *Topasna* and therefore does not enjoy any protection under that section of the Sunshine Act. However, the Court analyzes whether the requested intra-agency communications are shielded by the work-product doctrine.[6]

Focusing on the AG's role as a legal consultant to the Government of Guam, the Court determines that any intra-agency communications regarding future litigation like *Topasna* or potential legal challenges to the AG's interpretation of the DOA's Rule 8.06 could be included in the gambit of work-product. However, the Court has no way of determining which documents enjoy such protection because the AG did not submit an affidavit or index supporting its claim of privilege. If it wishes to avail of the privilege, it must submit an affidavit and index to the Court for review.

### b. As a Government Agency Administering to Employees

Turning to the AG's role as an employer, the Court finds that the AG has not met its burden in shielding relevant documents from disclosure. The deliberative process privilege does not apply to any intra-agency communications regarding internal employee payment because the AG provides no evidence that it has pondered or imposed an internal administrative decision on how to handle pay matters during the pandemic. Thus, any communications related to the AG's internal employee payments would be neither deliberative nor predecisional. *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 219 (D.D.C. 2012) (finding that emails that dealt with an existing policy are neither deliberative nor predecisional); *see also Sterling Drug, Inc. v. F.T.C.*, 450 F.2d 698, 708 (D.C. Cir. 1971) (holding that to prevent the development of secret law within an agency, a court "must require it to disclose orders and

---

[5] Section 10108(a) shields from disclosure documents "pertaining to pending litigation to which the agency is a party until the pending litigation has been finally adjudicated or otherwise settled."

[6] The AG only invokes the work-product doctrine to shield any intra-agency communications regarding *Topasna* or similar, future litigation from disclosure. Response at 11.

interpretations which it actually applies in cases before it").[7] The AG must disclose these communications.

## D. Communications on Personal Devices

Finally, with respect to the second request, the AG argues that personal communications among and between AG employees are not public records subject to disclosure, but agrees that AG-related business can be transmitted on its employees' personal devices. The AG also represented to the Court that it asked its employees to search their personal devices for information responsive to Fisher's request. The AG attorney attending the hearing, Deputy Attorney General James L. Canto, II, was unfamiliar with any AG policy concerning the conduct of AG business by AG employees on their personal devices and/or preservation of public information transmitted on such devices. Attorney Canto also could not say whether the AG has established written guidelines for the accessibility of records and records exempted from disclosure as required under section 10106.

Responsive communications concerning public business transmitted over personal devices cannot be shielded from disclosure. While "No one is interested in seeing WhatsApp photographs of a basket of kittens sent by the Attorney General to his Chief Prosecutor," Reply at 4 (July 22, 2020), communications "relating to the conduct of the public's business prepared, owned, used, or retained" by the AG must be disclosed. 5 GCA § 10102(d). The AG may not "own" or "retain" information transmitted on its employees' personal devices, but public documents and communications prepared or used on such devices still fall under section 10102(d). The AG correctly asked its employees to turn over responsive documents stored on their personal devices, such as WhatsApp chats. The AG must ensure that it has fully complied

---

[7] The AG does not claim that the attorney-client privilege or the work-product doctrine applies in its role as an employer.

with its Sunshine Act responsibilities despite its belief that personal communications are not subject to disclosure.

## III.    <u>CONCLUSION & ORDER</u>

Before the Court can determine whether any of the AG's claimed privileges apply to Fisher's request, it must submit an index and affidavit supporting its claims of privilege within 10 days of this Order. In addition, any intra-agency communications regarding internal employee payments must be disclosed. The AG must ensure that it has fully complied with its obligation to retrieve public documents contained on any of its personnel's personal devices.

SO ORDERED this 14th day of August 2020.

<u>HON. ELYZE M. IRIARTE</u>
**Judge, Superior Court of Guam**

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
Atty Thomas Fisher.
-AG - Civil Litigation.
Date: 8-14-20 Time: 12:40
**Linda M. Perez**
Deputy Clerk, Superior Court of Guam

Appearing Parties:
Thomas J. Fisher, *pro se*
Deputy Attorney General James L. Canto II for the Respondent Leevin Camacho, Attorney General of Guam